UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER F. ALFANO, JR.,

                           Plaintiff,

v.                                              7:15-CV-0345
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CONBOY, MCKAY, BACHMAN,                          LAWRENCE HASSELER, ESQ.
& KENDALL, LLP
  Counsel for Plaintiff
407 Sherman St.
Watertown, NY 13601

U.S. SOCIAL SECURITY ADMIN.                      ANDREEA LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 15.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Peter F. Alfano,

Jr. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 12, 13.)  For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on June 7, 1973.  (T. 122.)  He completed high school.  (T. 32.) Generally, Plaintiff's alleged disability consists of knee and back impairments.  (T. 240.) He previously worked as a construction laborer.  (T. 32.)

### B.    Procedural History

In a decision dated July 17, 2004, Plaintiff was found disabled as of December 15, 2001.  (T. 114-121.)  On February 29, 2012, the Commissioner determined that Plaintiff was no longer disabled as of March 2, 2012.  (T. 122.)  The determination was upheld upon reconsideration on October 10, 2012 after a disability hearing by a State Agency Disability Hearing Officer.  (T. 137-145.)  Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge.  On August 28, 2013, Plaintiff appeared before the ALJ, Bruce S. Fein.  (T. 69-113.)  On October 11, 2013, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 23-43.) On March 3, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following eight findings of fact and conclusions of law.  (T. 27-38.)  First, the ALJ found that the most recent favorable

medical decision finding that Plaintiff was disabled was the decision dated July 17, 2004 ("comparison point decision" or "CPD").  (T. 27.)[1]  Second, the ALJ found that through March 2, 2012, Plaintiff did not engage in substantial gainful activity.  (*Id.*)  Third, the ALJ found that Plaintiff did not develop any additional impairments after the CPD through March 2, 2012.  (*Id.*)  Fourth, the ALJ determined that as of March 2, 2012, Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 29.)  Fifth, the ALJ found that medical improvement occurred as of March 2, 2012.  (*Id.*)  Sixth, the ALJ determined that as of March 2, 2012, Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work.  (T. 30.)  The ALJ determined Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight hour workday, engage in all postural activities occasionally, and had no other physical exertional or non-exertional limitations other than being limited to using the right hand for occasional grasping and fingering.  (*Id.*)  Seventh, the ALJ determined Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's RFC.  (T. 32.)  Eighth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 32-33.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

---

[1]     The CPD determined that Plaintiff suffered from the severe impairments of status post right ulnar neuropathy and bilateral knee pain.  Due to Plaintiff's limitations he had a RFC to engage in less than a full range of sedentary work.  Plaintiff's ability to finger, handle, reach and use hand controls was limited and he required a sit/stand option at will.  The CPD also determined Plaintiff suffered from depression and his medication made him groggy.  (T. 28.)

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly consider all of Plaintiff's severe impairments. (Dkt. No. 12 at 12-15 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to properly evaluate and give controlling weight to Plaintiff's primary treating physicians' opinions. (*Id.* at 15-18.) Third, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility. (*Id.* at 18-20.) Fourth, and lastly, Plaintiff argues the ALJ failed to properly assess Plaintiff's RFC. (*Id.* at 20-22.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ reasonably found that Plaintiff did not have a severe right hip or back impairment. (Dkt. No. 13 at 5-8 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated the medical evidence and reasonably found the Plaintiff retained the RFC for a range of light work. (*Id.* at 8-18.) Third, and lastly, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 18-22.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard for Continuing Disability

An individual's continued entitlement to disability benefits under the Social Security Act is conditioned on periodic review. 42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1590, 404.1589. The Commissioner may terminate disbursement of benefits upon finding that an individual's impairment is no longer disabling. 42 U.S.C. § 423(f). The Commissioner has established an eight-step evaluation process to determine whether an individual continues to be disabled as defined by the Social Security Act. 20 C.F.R. § 404.1594.

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, and any applicable trial work period has been completed, the claimant is no longer disabled. If not, the Commissioner's review proceeds.

At step two, the Commissioner determines whether the claimant's impairment, or combination of impairments, meets or equals the severity of an impairment listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1594(f)(2). If so, the claimant's disability continues. If not, the Commissioner's review proceeds.

At step three, the Commissioner must determine whether there has been medical improvement. 20 C.F.R. § 404.1594(f)(3). Medical improvement is any decrease in medical severity of the claimant's impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1). If medical improvement has occurred, the Commissioner's review proceeds to step four. If not, the Commissioner's review proceeds to step five.

At step four, the Commissioner must determine whether medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is

related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. 20 C.F.R. § 404.1594(b)(3). If medical improvement is unrelated to the claimant's ability to work, the Commissioner proceeds to step five. If medical improvement is related to the claimant's ability to work, the Commissioner's review proceeds to step six.

At step five, the Commissioner must determine whether an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of medical exceptions set forth in 20 C.F.R. § 404.1594(d) and (e). If an exception from the first group applies, the analysis proceeds to step six. If an exception from the second group applies, the claimant's disability has ended. If no exception applies, the claimant's disability continues.

At step six, the Commissioner must determine whether all of the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to perform basic work activities, the claimant is no longer disabled. If all current impairments in combination significantly limit the claimant's ability to perform basic work activities, the analysis proceeds to step seven.

At step seven, the Commissioner must assess the claimant's RFC based upon all current impairments and determine whether the claimant is able to perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If capable of performing past work, the claimant is no longer disabled. If not, the analysis proceeds to step eight.

At step eight, the Commissioner must determine whether there is other existing work that the claimant can perform given the claimant's RFC, age, education, and past

work experience.  20 C.F.R. § 404.1594(f)(8).  If capable of performing other work, the

claimant is no longer disabled.  If incapable of performing other work, the claimant's

disability is found to continue.

Review of the claimant's disability may cease and benefits continued at any point

if the Commissioner finds sufficient evidence that the claimant remains unable to

engage in substantial gainful activity.  20 C.F.R. § 404.1594(f).

## IV.    ANALYSIS

### A.    Plaintiff's Severe Impairments

Under the Regulations an impairment will be found "not severe" if the medical

evidence establishes only a slight abnormality or combination of slight abnormalities

which would have no more than a minimal effect on Plaintiff's ability to perform basic

work-related activities, such as walking, standing, or sitting.  20 C.F.R. § 404.1521.

Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*,

32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-

CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §

404.1512(a).

The Second Circuit has held that the "mere presence of a disease or impairment,

or establishing that a person has been diagnosed or treated for a disease or

impairment" is not, by itself, sufficient to render a condition "severe."  *Coleman v.

Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995).  Indeed, a "finding of 'not severe' should

be made if the medical evidence establishes only a 'slight abnormality' which would

have 'no more than a minimal effect on an individual's ability to work.'"  *Rosario v. Apfel,*

No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v.

Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, where the ALJ has determined that an impairment is non-severe, "other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-01398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Plaintiff argues the ALJ erred in his determination that Plaintiff's right hip impairment and osteoarthritis in his thoracic spine were non-severe impairments. (Dkt. No. 12 at 12-15 [Pl.'s Mem. of Law].)

The ALJ determined that Plaintiff had the same impairments that he had at the time of the CPD; post right ulnar neuropathy and bilateral knee pain. (T. 28.) The ALJ further determined that Plaintiff did not develop additional impairments after the CPD through March 2, 2012. (*Id.*) The ALJ then proceeded with the sequential process. In those sequential steps, the ALJ specifically considered Plaintiff's hip impairment. For example, the ALJ noted consultative examiner Sandra Boehlert, M.D. opined Plaintiff's

limitations were due to right hip and right knee pain.  (T. 30.)  Because the ALJ considered Plaintiff's hip impairment throughout his decision, any error in classifying the impairment as non-severe was harmless. *See Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination).

Plaintiff argues the ALJ failed to determine that Plaintiff's herniated thoracic discs was a severe impairment.  (Dkt. No. 12 at 14 [Pl.'s Mem. of Law].)  In support of his argument, Plaintiff contends that he received treatment on multiple occasions from Dr. Meny for his thoracic back pain.  (*Id.*)  However, the record reveals Plaintiff aggravated his mid-back in August of 2010 (T. 354), had "good days and bad days" and medication helped, but he ran out (T. 352).  Dr. Meny's notations from December 14, 2009 simply list Plaintiff's history of impairments, including herniated thoracic disc.  (T. 386.)  Dr. Meny's notations from that time indicated Plaintiff was "off all his medication" and did not "need them anymore."  (*Id.*)  A physical exam on September 21, 2010, revealed no paravertebral muscle spasms and reduced range of motion in Plaintiff's lumbar spine, not his thoracic spine.  (T. 352-353.)  Notations from March 5, 2012, list "thoracic disc degen" under "active problem," but indicated Plaintiff's "chief complaint" was knee and hip pain.  (T. 387.)  Additional medical records cited by Plaintiff in support of his argument only listed Plaintiff's thoracic impairment as an "active problem," however, the actual treatment notations indicated that Plaintiff was not seeking treatment for any pain or limitations arising from this thoracic spine impairment.  (T. 510-515, 526-527.)  Therefore, although Plaintiff was diagnosed with thoracic degenerative disc disease and treated for the disease at some point during his overall medical care, the "mere

presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y.1995)).  Plaintiff failed to establish that his thoracic degenerative disc disease imposed any functional limitations that precluded basic work activities.

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ did not err in his determination that Plaintiff's hip and thoracic back impairment were non-severe.  It is recommended that the ALJ's determination, that Plaintiff's hip and thoracic back impairment are non-severe, be upheld.

**B.    The ALJ's RFC Determination and Weighing of the Medical Evidence in the Record.**

A plaintiff's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citing SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)).  In making an RFC determination, the ALJ will base his determination on "all the relevant evidence" in a plaintiff's case record.  20 C.F.R. § 404.1545(a).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 404.1527(c)(1)-(6).

It is well established that a treating physician's opinion as to the nature and severity of an impairment is given controlling weight. *Greek v. Colvin*, 802 F.3d 370, 375

(2d Cir. 2015) (per curiam). But a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record. *Greek,* 802 F.3d at 375.

The following factors must be considered by the ALJ when deciding how much weight the treating source's opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

The ALJ ultimately determined that based on the medical evidence in the record, Plaintiff experienced significant medical improvement due to his weight loss. (T. 29.) Plaintiff essentially contends that the ALJ's RFC determination was faulty because the ALJ failed to properly assess the opinions of Plaintiff's treating sources, Drs. Meny and Izant. (Dkt. No. 12 at 15-18, 20-22.) For ease of analysis, Plaintiff's multiple arguments will be address in a consolidated manner.

Plaintiff argues that the ALJ "ignored" the opinions of Plaintiff's treating providers because they did not provide a function by function analysis. (Dkt. No. 12 at 15-16 [Pl.'s Mem. of Law].) First, contrary to Plaintiff's contention, the ALJ did not "ignore" the

opinions of Drs. Meny and Izant. The ALJ thoroughly summarized and discussed their treatment notations and opinions throughout his decision. (T. 29, 31, 33-37.)

Second, the ALJ provided "no evidentiary weight" to the specific opinions made by Drs. Meny and Izant regarding Plaintiff's ultimate disability status. (T. 36.) On March 12, 2013, Dr. Meny commented in a treatment notation that Plaintiff was "totally disabled at this time due to knee pain." (T. 514.) On February 27, 2012, Dr. Izant stated Plaintiff was "temporarily totally disabled . . . due to the amount of narcotics he is presently taking." (T. 518.) The ALJ did not commit legal error in affording these statements "no evidentiary weight" because an opinion that a plaintiff is disabled is an issue reserved to the ALJ. 20 C.F.R. § 404.1527(d).

The ultimate finding of whether Plaintiff was disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner. Accordingly, we find no error in the ALJ's decision not to accord controlling weight to Dr. Desai's opinion.") (internal citations omitted); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight). Therefore, the ALJ did not err in

affording the determinations of Drs. Meny and Izant no weight, because a doctor's opinion regarding the disability of a plaintiff is not binding on the ALJ.

Plaintiff argues the ALJ committed legal error in his assessment of Drs. Meny and Izant's opinions because he failed to offer substantial evidence that was inconsistent with the opinions. (Dkt. No. 12 at 17-18 [Pl.'s Mem. of Law].) To be sure, the opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Further, the ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Although Drs. Meny and Izant provided treatment records, the only "opinions" they provided regarding Plaintiff's functional abilities were the statements that Plaintiff was disabled, which, for the reasons already discussed, the ALJ properly afforded no weight. As stated, the opinions of Drs. Meny and Izant, were statements pertaining to Plaintiff's ultimate disability status, which was a determination to be made by the ALJ. Therefore, the ALJ did not commit legal error in his assessment of the opinions of Drs. Meny and Izant.

The ALJ discussed significant evidence that was inconsistent with Drs. Meny and Izant's opinion that Plaintiff was disabled. The ALJ evaluated the medical opinions of Drs. Findlay and Boehlert, treatment notations provided by Drs. Meny and Izant, and Plaintiff's activities of daily living. (T. 28-37.)

Plaintiff argues it was "improper" for the ALJ to dismiss Drs. Meny and Izant's statements that Plaintiff was disabled and, "as a matter of law" the ALJ was required to recontact the sources. (Dkt. No. 12 at 17 [Pl.'s Mem. of Law].) To be sure, the ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. § 404.1512(d). An ALJ need not, however, seek additional detail from a given provider if the record contains notes from that provider "adequate for the ALJ to determine [the plaintiff's] disability." *Whipple v. Astrue,* 479 Fed.Appx. 367, 370 (2d Cir. 2012). The ALJ has a duty to seek records from treating sources, but is not hamstrung by the search's shortcomings. *Merritt v. Colvin*, No. 5:12-CV-01341, 2015 WL 6835012, at *3 (N.D.N.Y. Nov. 2, 2015); *Streeter v. Comm'r of Soc. Sec.,* No. 5:07-CV-858, 2011 WL 1576959, at *4 (N.D.N.Y. Apr. 26, 2011). Rather, an ALJ may, in appropriate cases, "satisfy the duty to develop the record by relying on the plaintiff's counsel to obtain additional medical documentation." *Wozniak v. Comm'r of Soc. Sec.,* No. 1:14-CV-00198, 2015 WL 4038568, at *9 (W.D.N.Y. June 30, 2015); *Myers ex rel. C.N. v. Astrue,* 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012). Here, the ALJ fully developed the record.

The ALJ attempted to obtain a medical source statement from Dr. Meny on November 5, 2012. (T. 408.) Regarding Dr. Izant, Plaintiff testified that he stopped receiving treatment from Dr. Izant due to insurance problems (T. 83-84, 94); therefore, the information provided by Dr. Izant was complete. Further, at the hearing the ALJ inquired whether the record was complete. (T. 72.) Plaintiff's counsel stated he had written Dr. Meny, but stated he did not believe any additional information would "add anything substantive." (*Id.*) Here the ALJ was under no obligation to seek additional information because there were no obvious gaps in the record, the record contained

enough information to make a disability determination, Plaintiff's counsel indicated the record was complete, and the ALJ attempted to procure a medical source statement from Dr. Meny.

Plaintiff appears to argue the ALJ erred in his RFC analysis because he did not perform a function-by-function analysis.  (Dkt. No. 12 at 20-21 [Pl.'s Mem. of Law].)  However, the Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand.  *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir.2013).  Therefore, the ALJ did not commit legal error in failing to perform a function-by-function analysis.

Plaintiff argues the ALJ erred in affording "greatest evidentiary weight" to non-examining State agency medical consultant, "H. Findlay[2]."  (Dkt. No. 12 at 16-17, 21-22 [Pl.'s Mem. of Law].)  Plaintiff specifically argues that (1) as a matter of law Dr. Findlay's opinion cannot overcome the opinion of a treating source and (2) Dr. Findlay's opinion was only current through March 2, 2012 and cannot constitute substantial evidence because Plaintiff's condition significantly deteriorated after Dr. Findlay's opinion.  (*Id.* at 16, 21-22.)

First, affording more weigh to the opinion of a State agency consultant does not warrant automatic remand.  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since

---

[2]        "H. Findlay" was a non-examining State agency medical consultant who reviewed Plaintiff's record and completed a Physical Residual Functional Capacity Assessment" on July 23, 2012. (T. 398-403.)  The assessment was signed "H. Findlay" with the medical code "19."  (T. 403.)  Medical code 19 refers to internal medicine.  POMS DI 24501.004.

such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e).

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015), *adopting Report & Recommendation*, (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions")); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02-CCV-3561, 2004 WL 99935, at *9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").  Therefore, the ALJ did not err as a matter of law in affording "greatest evidentiary weight" to Dr. Findlay.

Second, Plaintiff's argument that Dr. Findlay's opinion only applies up through March 2, 2012 and cannot constitute substantial evidence to overcome Drs. Meny and Izant's opinions also fails.  Plaintiff states that "there [was] simply no medical evidence in the Record to overcome the Plaintiff's testimony and the opinions of his attending physicians that he lacks the residual functional capacity for even sedentary work."  (Dkt. No. 12 at 21-22 [Pl.'s Mem. of Law].)  However, Drs. Meny and Izant did not provide functional limitations that indicated Plaintiff could not perform even sedentary work.  The only opinions expressed by Drs. Meny and Izant were that Plaintiff was "disabled"  (T. 514, 518) and as stated herein, the ALJ properly afforded those opinions no evidentiary

weight in accordance with the Regulations.  *See* 20 C.F.R. § 404.1527(e).  The ALJ's determination that Plaintiff had the RFC to perform limited range of light work as of March 2, 2012 and that Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in Plaintiff's RFC, was supported by substantial evidence.

The ALJ's RFC determination was supported by the medical evidence in the record, namely the medical opinions of State agency medical consultant, Dr. Findlay, State agency consultative examiner, Dr. Boehlert; and treatment notations and observations by Drs. Meny and Izant.

On July 23, 2012, Dr. Findlay reviewed Plaintiff's medical record, including objective medical evidence, notations dated March 2012 from Dr. Meny, and the consultative examination report.  (T. 396.)  Dr. Findlay's report indicated that Plaintiff's "new MD" did not respond to a request medical records.  (*Id.*)  Based on the evidence reviewed, Dr. Findlay opined Plaintiff retained the capacity to perform the exertional requirements of light work.  (T. 399.)  Dr. Findlay opined that due to the arthritis in his knees, Plaintiff could occasionally perform postural limitations.  (T. 400.)  Dr. Findlay opined Plaintiff had significant medical improvement since the CPD based on his weight loss and moderate degenerative joint disease of the knees, and right hip.  (T. 396.)

On February 9, 2012, Dr. Boehlert completed a consultative examination.  (T. 336-339.)  On examination, Dr. Boehlert observed that Plaintiff had a normal gait and station, could walk on heels and toes without difficulty, used no assistive devices, was able to change for the exam, was able to get off and on the exam table, and was able to rise from a chair without difficulty.  (T. 337.)  She noted Plaintiff's hand and finger

dexterity were intact, he had full grip strength, he had sensory deficit in his right hand on the lateral edge and lateral 5th digit. (T. 338.) She observed that Plaintiff had full strength in his upper extremities. (*Id.*) Dr. Boehlert noted Plaintiff's right knee flexion was limited due to tenderness and was slightly warm. (*Id.*) She noted Plaintiff's left knee had full range of motion. (*Id.*) She noted his right hip had full range of motion, but there was pain with abduction. (*Id.*) In a medical source statement she opined Plaintiff had "mild limitation to heavy ambulation, repetitive squatting, and heavy exertion in the standing position due to right hip and right knee pain." (T. 338.) Dr. Boehlert stated that she noted "no clear deficits" in Plaintiff's hands. (*Id.*)

Treatment observations and notations of Plaintiff's treating sources, as outlined in the ALJ's determination, further supported the ALJ's RFC determination. For example, on March 5, 2012, Plaintiff complained of right knee and hip pain. (T. 387.) Dr. Meny observed Plaintiff's right hip was tender on palpation and pain was present on active and passive motion. (T. 389.) Dr. Meny referred Plaintiff to a vascular surgeon, ordered x-rays of his hip, physical therapy, referred Plaintiff to an orthopedist, and prescribed pain medication. (*Id.*) X-rays indicated moderate degenerative joint disease in the right knee and prominent degenerative joint disease in the right hip. (T. 391-394.) Of note, Dr. Findlay reviewed Plaintiff's x-rays and the March 2012 notations from Dr. Meny and concluded Plaintiff could perform light work. (T. 396.) Treatment notations and observations provided by Dr. Izant also failed to indicate that Plaintiff had additional limitations beyond those found by Dr. Findlay, and ultimately adopted by the ALJ. For example, Dr. Izant treated Plaintiff on April 3, 2013 for complaints of knee pain. (T. 522.) Dr. Izant observed on examination that Plaintiff's left knee showed some atrophy,

some decreased range of motion, but no instability. (T. 523.) Dr. Izant recommended hyperviscosity supplementation. (T. 524.) During a follow up examination in September of 2013, Dr. Izant noted Plaintiff had tenderness on palpation to the right knee, but the stability exam was unremarkable. (T. 541.) Dr. Izant noted Plaintiff had "a couple months relief" with a Synvisc injections. (*Id.*) The examination findings from Drs. Meny and Izant document reports of pain and treatment provided for that pain; however, the findings are not inconsistent with an ability to perform light work.

Therefore, the ALJ properly assessed the opinion evidence in the record. The ALJ did not err in affording no weight to treating source opinion that Plaintiff was disabled, because the question of disability is ultimately one left to the ALJ. Further, the ALJ did not err in affording more weight to the opinions of State agency consultants over treating sources. The ALJ's RFC determination was supported by the opinions of the State agency consultants, and to a degree by treating source examination notations which were not inconsistent with the ability to perform light work. Because the ALJ properly assessed the medical opinion evidence in the record, Plaintiff's argument that his condition significantly worsened after February 1, 2013 fails. Plaintiff failed to sustain his burden of proving his impairments became disabling at that time. It is recommended that the ALJ's RFC determination be upheld.

### C. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate Plaintiff's reported symptoms. *See* 20 C.F.R. § 404.1529; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit Plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment the plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that the plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); SSR 96-7p.

The ALJ determined that Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (T. 31.)

Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility. (Dkt. No. 12 at 18-20 [Pl.'s Mem. of Law].) Plaintiff argues the ALJ "mis-interpret[ed]" Dr. Meny's March 2, 2012 notations because the notations, according to Plaintiff, were consistent with Plaintiff's statements. (*Id.* at 19.) Plaintiff asserts that the ALJ's misinterpretation adversely affected his credibility determination and is grounds for reversal. (*Id.*) However, the ALJ did not apply an incorrect legal standard as Plaintiff asserts. It appears that Plaintiff merely disagrees with the ALJ's determination. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Circ. 2013) ("The ALJ did not apply an incorrect legal standard when judging the credibility of Pellam's testimony . . . We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.") A thorough review of the record and the ALJ's decision failed to indicate that the ALJ misinterpreted any evidence in the record in making a credibility determination. (T. 31.)

Here, the ALJ adequately summarized the medical evidence in the record and the ALJ provided an accurate summary of Plaintiff's testimony. (T. 31.) The ALJ properly adhered to the Regulations in his credibility analysis. For example, the ALJ discussed Plaintiff's activities of daily living (T. 31) and the ALJ discussed Plaintiff's treatment and medications (T. 28-29). 20 C.F.R. § 404.1529(c)(3). The ALJ also took

into consideration Plaintiff's work history, which was proper under 20 C.F.R. § 404.1529(c)(3).  (T. 31.)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Therefore, for the reasons stated herein, and further outlined in Defendant's brief, the ALJ did not err in his credibility determination.  It is recommended that the ALJ's credibility determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     June 14, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge